**CITY OF STAMFORD et al., Appellants,**

v.

**J. R. BALLARD et al., Appellees.**

No. 3561.

Court of Civil Appeals of Texas.

Eastland.

Nov. 11, 1960.

Rehearing Denied April 21, 1961.

Jack W. Watson, Stamford, for appellants.

Curtis F. Pogue, Ratliff & Ratliff, Haskell, for appellees.

PER CURIAM.

J. R. Ballard and others, who own and operate fishing camps and rent boats in Haskell County adjacent to Lake Stamford, which lake is a part of the City of Stamford, sued the city and its "lake officer", McDaniel, in Haskell County. Plaintiffs sought to have a penal ordinance levying an inspection fee on rent boats used on said lake held invalid and its enforcement enjoined. They alleged the city had enacted Ordinance 364 authorizing the city, through McDaniel, to collect $18 per boat from all owners of rent boats used on said lake as an annual inspection fee; that plaintiffs owned fifty rent boats and McDaniel had insisted they pay $18 annually for each; that said ordinance provided penalties for its violation; that McDaniel had harassed and threatened to arrest plaintiffs and their rent boat customers in an effort to coerce them into paying such fees; that such action had caused their customers to leave the lake and not rent their boats and prevented others from coming to said lake and renting their boats, causing them to lose business and profits; that they were threatened with a multiplicity of arrests and prosecutions for violation of said ordinance and that they, and their customers, would be arrested and prosecuted many times unless the city and McDaniel were enjoined from enforcing the ordinance. They alleged that prior to the effective date of said ordinance the Texas legislature enacted Article 1722a, the Water Safety Act, which provides for payment of a numbering or registration fee to the State on motorboats used on the waters of the State and that no such fee, or other like burdens, could be required of any owner of a rent boat by a city, and that said ordinance was in conflict with that portion of the Water Safety Act and, therefore invalid.

The city and McDaniel filed pleas of privilege to be sued in Jones County. Upon a hearing, their pleas were overruled and they have appealed. Appellants' "points" are (1) that a municipal corporation is sueable only in the county of its domicile, unless venue is otherwise fixed by some exception to Article 1995; (2) that venue is not maintainable in Haskell County under exception 4; (3) that the suit being against the city and its employees, the naked joinder of McDaniel in his official capacity as a law enforcement officer does not alter the nature of plaintiffs' suit, or the venue thereof, and (4) that venue is not maintainable in Haskell County under Article 4656, because the injunctive relief sought is ancillary to the principal relief of a declaratory judgment construing said ordinance.

Appellant recognizes that, although at common law a city could not be sued outside the county of its residence, since the decision by our Supreme Court in City of Tahoka v. Jackson, 115 Tex. 89, 276 S.W. 662, the venue of a suit against a city is governed by Article 1995. In that case it was expressly held that under exception 5 a city might be sued on an obligation in a county, other than its residence, where it had contracted in writing to perform such an obligation. The court said that venue was prescribed by legislative enactment and common law rules as to venue did not obtain. In City of Corpus Christi v. McMurrey, Tex.Civ.App., 90 S.W.2d 868, we held a city could be sued in a county other than its residence if certain other exceptions to Article 1995 were applicable. We

expressly refused to follow such decisions as City of Corpus Christi v. Coffin, Tex. Civ.App., 35 S.W.2d 202, and we refused to certify the question. See City of Corpus Christi v. McMurrey, Tex.Civ.App., 92 S.W.2d 1108. In City of Dallas v. Hopkins, Tex.Civ.App., 16 S.W.2d 852, it was held that a city could be sued out of the county of its residence when exception 9 to Article 1995 was applicable. See also City of Dallas v. Springer, Tex.Civ.App., 8 S.W.2d 772. There is no reason to hold that a city may be sued out of the county of its residence when one exception to Article 1995 is shown to be applicable but that it cannot be sued outside the county of its residence when other exceptions are applicable. Since the decision in the City of Tahoka case there can be no doubt but that a city may be sued outside the county of its residence when any exception to Article 1995 is shown to be applicable.

■ A claimant whose property rights will be substantially injured by enforcement of an invalid ordinance is entitled to injunctive relief. Bielecki v. City of Port Arthur, Tex.Com.App., 12 S.W.2d 976; City of Dallas v. Liberty Annex Corporation, Tex.Com.App., 295 S.W. 591; Brice v. City of Dallas, Tex.Civ.App., 300 S.W. 970. In this suit to enjoin harassment, multiple arrests and prosecutions, with consequent loss of profits, under an alleged invalid ordinance, McDaniel, who was charged with the duty of collecting such fees and instituting prosecutions, was a proper party defendant. It is not requisite under exception 4 that the resident defendant be a necessary party. 43–B Tex.Jur. 212; Benson v. Greenville National Exchange Bank, Tex.Civ.App., 228 S.W.2d 272; Stockyards National Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300.

■ Venue was evidently sustained as to the City of Stamford under exception 4 to Article 1995, because McDaniel is a resident of Haskell County. The burden was upon the plaintiffs in order to sustain venue in Haskell County against the city under exception 4 to allege a joint cause of action against the city and McDaniel, or to allege a cause of action against the city intimately connected with that alleged against McDaniel that they may be joined to avoid a multiplicity of suits. Stockyards National Bank v. Maples, supra. We think plaintiffs' petition fulfills this requirement. But, plaintiffs were also required to allege and to prove, by a preponderance of the evidence, a cause of action against McDaniel and that he is a resident of Haskell County. Moreland v. Leslie, Chief Justice, 140 Tex. 170, 166 S.W.2d 902; Ladner v. Reliance Corp., 156 Tex. 158, 293 S.W.2d 758; Compton v. Elliott, Tex.Civ.App., 55 S.W.2d 247; 126 Tex. 232, 88 S.W.2d 91. It is undisputed that McDaniel resides in Haskell County. The judgment overruling the city's plea of privilege is correct if plaintiffs proved a cause of action against the resident defendant. To do so plaintiffs had to show that the ordinance levying an inspection fee was in fatal conflict with Article 1722a.

The ordinance provides for the collection of an annual inspection fee of $18 for each rent boat placed on the lake and for the issuance of an inspection certificate. Plaintiffs contend that section 17(a) of Article 1722a is in fatal conflict with the portion of the ordinance requiring payment of an inspection fee. They say that the owner of a boat must first pay the State a fee to obtain a "certificate of number", which entitled him to the use of the waters of the State, but, because of the city ordinance, before he can launch his boat upon Lake Stamford he must pay another fee to the City of Stamford; that if other cities should pass the same ordinance a boat owned desiring to go on several lakes would have to pay several fees before he could use the waters of the State, which, they say is permitted by the State by payment of one "numbering or registration fee". Plaintiffs say the ordinance simply requires payment of another fee after the boat owner has acquired the right to use the waters of the State by paying the certificate of number or registration fee to the State;

that when the legislature provided, in section 13(a), Article 1722a, that "nothing in this Act shall be construed to prevent the adoption of any ordinance * * * relating to operation and equipment of vessels, * * * consistent with the provisions of this Act" it did not intend to permit cities to further burden boat owners with fees before they could operate their boats upon city owned lakes and that the inspection fee has all the earmarks of a registration fee and is a "like burden" to that imposed by the State to obtain a certificate of number.

█ The Water Safety Act, Article 1722a, provides in section 1 that it is the policy of the State to promote safety for persons and property in the use, operation and equipment of vessels. Subdivision 9 of section 2 defines a boat livery as a business establishment engaged in renting motorboats for profit. Section 3 provides that no person shall operate a motorboat on the waters of this State unless it is numbered. Section 4 deals with identification numbers for boats. Section 6 provides that dealers or manufacturers of motorboats, instead of securing a certificate of number for each motorboat, may, for the purpose of demonstration or testing, procure a dealer or manufacturer's number. Section 9 (a) provides that the owner of a boat livery shall, among other things, keep a record of the hiring of its boats, which record shall show the certificate of number of the rented boats. Section 9(b) provides that the owners of boat liveries shall make application to the department for a certificate of number for each boat. Section 13(a) is as follows:

"The provisions of this Act, and of other applicable laws of this State, shall govern the operation, equipment, numbering and all other matters relating thereto whenever any vessel shall be operated on the waters of this State, or when any activity regulated by this Act shall take place thereon, but nothing in this Act shall be construed to

prevent the adoption of any ordinance or local law relating to operation and equipment of vessels, the provisions of which are consistent with the provisions of this Act, amendments thereto or regulations issued thereunder, provided further that an incorporated municipality may adopt ordinances limiting the horsepower of motorboats on all lakes owned by or situated in the jurisdictional limits of such municipality."

Section 17(a) levies a three year fee in connection with section 4, which section requires the owners of motorboats, without reference to whether it is a rent boat, to obtain an indentification number. Subdivision (d) of section 17 provides:

"The Certificate of Number and numbering for purpose of identification, and the fees herein provided for shall be in lieu of all other similar registrations heretofore required by a county, municipality or other political subdivision of this State, and no such registration fees or other like burdens shall be required of any owner of any motorboat by any county, municipality or other subdivision of the State."

Section 19 provides for the disposition of money from "boat registration fees".

Section 13(a) plainly says that the legislature did not intend to prevent the adoption of any ordinances relating to the operation and equipment of boats which are consistent with the Water Safety Act. True, subdivision (d) of section 17, Article 1722a, provides that the fee paid the State for a certificate of number shall be in lieu of all other similar "registrations" heretofore required by a city and that no such registration fee, or "other like burdens", shall be required of any owner of a motorboat by any city. The question presented is whether the inspection fee required by the ordinance is a like burden to the registration, or certificate of number, fee required by Article 1722a. Subdivision (d) of section 17, Article 1722a, has reference to a license

or registration fee paid for an identifying number. The provisions are similar to the requirement of a registration fee for an automobile. Long after a registration fee was required the State required an annual inspection of automobiles and payment of an inspection fee. Section 17 has no direct reference to rent boats, as such. The Water Safety Act specifically provides that cities may pass ordinances consistent with Article 1722a relating to operating and equipment of vessels. Of course, it is desirable that those renting boats furnish their customers with safe boats. The city is certainly not directly burdening the owner of rent boat with a registration fee. It requires an inspection to determine whether rent boats are safe and payment of a fee. The validity of the ordinance is not attacked upon the theory that it is exorbitant. The question is whether such inspection fee is a "like burden" to the registration fee, or numbering fee, required as incidental to obtaining an identifying number. With some difficulty we have concluded that it is not. The inspection fee required by the city and the registration fee required by the State are different in most characteristics except that money is required for the payment of both. We think there is little more resemblance between the two than there is between parking meter charges, automobile registration fees, plumbing inspection fees and the like. The legislature has recognized the difference between the inspection and registration of automobiles as distinct pieces of legislation. The legislature could easily have provided that cities could require no other burdens rather than no "like burdens" to the numbering or registration fee of the Water Safety Act. We conclude that the legislature did not intend to preclude cities from inspecting rent boats used on their waters and charging a fee therefor. It follows that plaintiffs did not prove a cause of action against the resident defendant. Under exception 4 to Article 1995, the plaintiffs cannot maintain the suit in Haskell County against the nonresident defendant, the City of Stamford, simply because they have not proved the venue facts essential to maintenance of the suit against the city in Haskell County under exception 4. That part of the judgment overruling the plea of privilege of the defendant McDaniel is affirmed. He resided in Haskell County. He had no right to insist upon being sued outside the county of his residence. That part of the judgment overruling the plea of privilege of the City of Stamford is reversed and the cause as to it is ordered transferred to Jones County.