**CITY OF CORPUS CHRISTI, Appellant,**

v.

**UNITARIAN CHURCH OF CORPUS CHRISTI, Appellee.**

No. 339.

Court of Civil Appeals of Texas.

Corpus Christi.

Dec. 31, 1968.

Rehearing Denied Feb. 13, 1969.

I. M. Singer, City Atty., Thomas D. McDowell, Asst. City Atty., Corpus Christi, for appellant.

Boone, Davis, Cox & Hale, Owen D. Cox, Corpus Christi, for appellee.

OPINION

NYE, Justice.

The Unitarian Church of Corpus Christi as the owner of certain property, applied to the City of Corpus Christi for a building permit to improve its property for church purposes. The Church was told by a city department employee that the church property would have to be platted prior to the issuance of the permit. The Church prepared a plat of the property, outlining the boundaries of its lot, designating utility easements and submitted it to the City Planning Commission for approval. After a hearing on the church's application, the Commission conditionally approved the church's plat. Approval was subject to the church dedicating a strip of their land, 25 feet by 630 feet for the purpose of widening an easement so that an existing street could be extended. The church was dissatisfied and appealed this decision to the City Council seeking approval of their plat without the requirement of street dedication. After a hearing, the City Council denied the relief sought by the church. The church then filed suit in the district court seeking a declaratory judgment: that the City had no authority under the applicable statutes, charters, and ordinances to require the church to file a map or plat of its property as a condition to granting the building permit. The church sought additionally, the issuance of a writ of mandamus to compel the City to approve their submitted plat. The trial was had before the court without a jury, resulting in a judgment granting the writ of mandamus against the City and ordering approval of the plat as submitted by the Church. The City has perfected its appeal. The Church, although not dissatisfied with the judgment of the court, files its cross appeal from the order of the court denying all other relief which included the City's right to require the Church to file for approval, any plat of the lot involved.

The Unitarian Church of Corpus Christi is a non-profit religious corporation which acquired title to a certain lot which is a 2½

acre tract of land. The church's lot was a portion of lot 6 in Section "B" of the Paisley Subdivision which was originally platted into lots and blocks in 1896. Lot 6 of this subdivision was further subdivided prior to the time the Paisley subdivision was annexed into the City of Corpus Christi. The church's grantor purchased one of these re-subdivided lots or tracts prior to its annexation, although the church itself purchased the subject lot, after the same was brought into the city limits. Situated on the lot is a small existing building which the church sought to improve as a part of its building program. The church's lot faces a major dedicated city street (Carroll Lane) on the southeast side. The lot was and is presently served with public utilities. Adjoining the church's property on the northeast side is a tract of land (also 2½ acres) called the Hancock Tract which has heretofore been platted. The owners of the Hancock Tract had dedicated to the City a strip of land 25 feet by 630 feet, being one half of the proposed extension of Kay Street.[1] The City by its present action would require the Church to dedicate the other half of the Kay Street extension as a condition to the approval of the plat and the subsequently granting of a building permit. See the following diagram.

■■■ The Church is the owner of the property within the City that is not now platted into lots and blocks. The charter of the City of Corpus Christi provides that the City " * * * shall never grant any permit to construct or repair any house or struc-

[1]. The easement along the Hancock Tract has never been opened to the public as a street. The record does not reveal whether the Hancock Tract was divided into lots when it was platted.

ture within such area (unplatted property) until such map shall be so approved and filed * * *." It follows as we discuss this point in more detail later, that it would be necessary that as a condition precedent to the granting of a building permit by the City, that the Church must file a plat of its unplatted property. It is likewise proper for a city to require a property owner to obtain a building permit prior to the erection of a building. This requirement is a valid exercise of a municipality's police power. The Church's cross points in regard to the requirement of filing a plat to obtain a building permit are overruled. The granting of the building permit is a governmental function. The permit must be granted, however, where the applicant has fulfilled all the requirements required by law. Mandamus will issue to compel the issuing of a building permit that has been withheld without lawful reason. 40 Tex. Jur.2d, § 364, Municipal Corporations, p. 48.

This is a limited type law suit involving a single lot owner whose unplatted property was annexed into the City. The property owner wishes to obtain a building permit to build in connection with the entire lot, understanding that such lot would not now or ever, under its proposed plat, be subdivided into two or more lots.

■ If the statutes, charter provisions or ordinances pertaining to the City of Corpus Christi do not impose upon the Church a legal obligation to dedicate a portion of its land for street purposes under these facts, or if such statutes, charter provisions or ordinances do not authorize the City to require a property owner to make such dedication, then the issuance of a mandamus will be proper. Where the church has done all that the statutes and law demands, the authorized granting of a building permit becomes a mere ministerial duty, the performance of which may be compelled by mandamus. Thus where the City itself or by and through its planning commission, in its construction of the law, de-

prives a citizen of an unquestionable legal right and there is no other adequate remedy, the court having power to issue mandamus may review the matter. Commissioners Court v. Frank Jester Development Co., 199 S.W.2d 1004 (Tex.Civ.App.— Dallas 1947, n. r. e.)

■ The charter and ordinances of a home rule city must be construed in light of constitutional and statutory provisions as they pertain to the charter provisions relating thereto. No home rule charter or ordinance passed under the home rule statute shall contain any provision inconsistent with the general laws of the state. Such a home rule city possesses powers not denied by the statute or the constitution so long as the City has incorporated those powers in its charter. Zachry v. City of San Antonio, 157 Tex. 551, 305 S.W.2d 558 (1957, affirming Tex.Civ.App. 296 S.W.2d 299).

Therefore, if the City of Corpus Christi has such power, it must be found within the following provisions of its charter, the statutes or authorized ordinances. Article V, Section 6 of the charter of the City of Corpus Christi provides in part as follows:

"Any property within the City * * * *not now platted into blocks and lots*, shall be platted * * * to conform to the requirements of * * * (the) * * * Department of Public Works and Zoning and Planning Commission. Its owners, before such property is laid off and *subdivided* shall file * * * a correct map thereof. The City shall never pay for the property used for streets * * * within any such subdivision, * * * *" (emphasis supplied)

" * * * After approval such map shall be filed in the office of the County Clerk in the manner provided by law. The head of the engineering * * * (Department) * * * shall never grant any permit to construct or repair any house or structure within such area until such map shall be so approved and filed * * *."

The City, by ordinance adopted in part the rules and regulations governing the platting of land into subdivisions as provided in Art. 974a, Vernon's Ann.Civ.St. Section 1 of such article provides in part as follows:

"Hereafter every owner of any tract of land situated within the corporate limits * * * who may hereafter *divide* the same in two or more parts *for the purpose of laying out any subdivision* of any tract of land or any addition to any * * city, or for laying out suburban lots or building lots, * * * shall cause a plat to be made thereof * * *." (emphasis supplied).

The City's ordinance above referred to defined a subdivision as follows:

."C. *SUBDIVISION.* A subdivision *is the division* of any lot, tract or parcel of land *into two or more parts,* lots or sites, *for the purpose,* whether immediate or future *of sale or division of ownership.* This definition also includes the resubdivision of land or lots which are a part of a previously recorded subdivision * * *." (emphasis supplied)

"D. *SUBDIVIDER AND/OR DEVELOPER.* The terms 'subdivider' and 'developer' are synonymous and used interchangeably, and shall include any person, * * * who does, or participates in the *doing of, any act toward the subdivision of land* within the intent, scope, and purview of this ordinance. The singular shall include the plural, and the plural shall include the singular." (emphasis supplied).

■ The language of Section 1 of Art. 974 is plural and relates to a division of property into parts. The same is true of the City charter and the applicable provisions of its ordinances. It contemplates subdivision for subdivision development purposes. The City's argument that the singular and plural include each other is *not applicable to the provisions.* A municipal charter is to be read as a whole and every word, phrase, and expression must be considered and interpreted as if deliberately chosen and used for a purpose. 39 Tex. Jur.2d, § 45, Municipal Corporations, p. 397. The Church does not propose to divide its property into two or more parts or to lay out a subdivision as stated in Art. 974a and the City's charter.

■ We believe that the applicability of the language in Art. 974a is controlled by the word "divide". The statute states that "every owner of any tract of land * * * who may hereafter *divide* the same in two or more parts * * *" controls the disposition of those who are affected thereby.

The City relies upon the case of Ayres v. City Council of Los Angeles, 34 Cal.2d 31, 207 P.2d 1, 11 A.L.R.2d 503 (1949) and Southern Pacific Company v. City of Los Angeles, 242 Cal.App.2d 38, 51 Cal.Rptr. 197 (1966). However, in each of these cases an ordinance or statute gave the authority required of them.

It is urged upon us that since the City's platting ordinance provides that whenever a half street has already been provided for, adjacent to a tract *"to be subdivided,"* the other remaining half street shall be platted in such *subdivision* in accordance with Section VI–A of the ordinance. (emphasis supplied). This platting ordinance refers to subdivisions and the emphasis is on "subdivide". The City summarizes the record and contends that the overwhelming evidence shows that the trial court erred and abused its discretion in ordering a writ of mandamus to issue against the City to approve the Church's plat in the face of the statutes, charter and ordinance which govern the approval of such plats. This is not a discretionary matter. There is no statute, charter or ordinance which would require the Church as a single lot owner to dedicate a portion of its property for streets in order to get approval of its plat to obtain a building permit, where the Church does not propose to subdivide the lot into smaller lots or otherwise divide it into a subdivision.

We have no quarrel with the trial court's judgment that the various articles and ordinances make the reasonable requirement that the Church must file a plat of its unplatted lot. However, the withholding of a building permit upon the condition that a portion (amounting to 15%) of the Church's property be dedicated to public use as a condition for the approval of such plat, is not by law authorized in this case.

The Church, throughout its briefs, contends that the City is attempting to take the Church's property for public use without paying adequate compensation therefor, in violation of the Constitution of the State of Texas and the United States of America. Our Texas Supreme Court has held that city charter provisions and building code ordinances which require owners of land to plat their property into blocks and lots to conform with abutting streets are not unconstitutional and where the regulations appear to be reasonable and are made to promote the general convenience and public welfare, such requirements come within the police power of the city. Halsell v. Ferguson, 109 Tex. 144, 202 S.W. 317 (1918). The City contends that this is not a "taking" since the Church is not required to build, hence not required to plat, and therefore does not have to make a street dedication. The City says that it has not made any formal request of the Church to dedicate anything; that the City has only informed the planning commission that a plat would not be approved unless it conforms with the plan of the City to the already established and existing street pattern. In this connection the City submits that its requirement of street dedication is reasonable and necessary, and that a need for the street is created by the new use of land that is proposed by the owner.

The City's own staff admitted that the Kay Street extension was not a part of the City's general plan. However, the City argues, that its planning ordinance, which adopted article 974a, V.A.T.S., comes within the police power of the City which would authorize the City to make such requirement of the Church. The ordinance recites as its purpose:

" * * * The purpose of promoting health, safety, morals and general welfare of the citizens of the City of Corpus Christi and the area within five (5) miles of the corporate limits of the City of Corpus Christi and to lessen congestion in the proposed streets, and to provide adequate light and air, and to prevent overcrowding of land, and to avoid undue concentration of population, and to facilitate the adequate provision of water, sewerage, and other utilities, parks and other public requirements that a platting ordinance be promulgated * * *."

Irrespective of such all inclusive declarations of a city's police powers, without specific lawful authorization effecting the factual situation of a particular property owner, a city is not permitted to withhold a plat upon the condition that a property owner make dedication of land for street purposes. The Supreme Court has said that:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident, to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but indispensable. * * *" Foster v. City of Waco, 113 Tex. 352, 255 S.W. 1104 at 1105 (1923).

Without constitutional, statutory or charter authorization it would not be a proper police function to require a property owner to dedicate its property for a public purpose without compensation. Such action would be contrary to the guarantee of the Federal and State Con-

stitutions in that regard.[2] In subdivision development, a city by statute and charter and/or ordinance is authorized to require the dedication of streets, alleys and utility easements as a part of the orderly development of a city proper. There is a difference concerning the statutorily authorized dedication of streets in subdivisions, and the exercise of the police power to take private property for street purposes without compensation. In subdivision development, the city is not taking private property for public use without compensation, but is merely regulating the use thereof. This distinction has been brought out in DuPuy v. City of Waco, 396 S.W.2d 103 at 107 (Tex.Sup.1965):

" 'The distinguishing characteristic between eminent domain and the police power is that the former involves the taking of property because of its need for the public use while the latter involes the regulation of such property to prevent the use thereof in a manner that is detrimental to the public interest. The police power may be loosely described as the power of the sovereign to prevent persons under its jurisdiction from conducting themselves or using their property to the detriment of the general welfare. * * * However, it is universally conceded that when land or other property is actually taken from the owner and put to use by the public authorities, the constitutional obligation to make just compensation arises, however much the use to which the property is put may enhance the public health, morals or safety.' 1 Nichols, Eminent Domain §§ 1.42, 1.42(1) (3d 1964)."

We have considered all of appellant's points of error and they are overruled.

The judgment of the trial court is affirmed.

SHARPE, J., concurs in the result.

2. See Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475 (1934) for an excellent discussion of the exercise of the police power by a municipal corporation).